IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
RODNEY ERIC GRAY,                 :    CIVIL ACTION
          Plaintiff               :
                                  :
     VS.                          :
                                  :
JO ANNE B. BARNHART,              :
Commissioner of Social Security,  :
          Defendant               :    NO. 05-2708
```

### REPORT AND RECOMMENDATION

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Rodney Eric Gray, brought this action under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act).  The parties have filed cross-motions for summary judgment.  For the reasons which follow, it is recommended that both motions be denied and the case remanded to the Commissioner.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a thirty-seven (37) year-old male born on May 6, 1968 (Tr. 120).  He has a high school education, and past work experience as a truck driver (Tr. 373-374).  Disability is alleged

1

as of October 16, 2003 due to injuries sustained in a motor vehicle accident (Tr. 47-49).

Plaintiff's application was denied initially, and upon reconsideration (Tr. 25-28). He then requested a hearing before an Administrative Law Judge (ALJ). A hearing was commenced on July 21, 2004, but continued for plaintiff to obtain representation (Tr. 362-368). A subsequent hearing was held on October 12, 2004, at which, plaintiff, represented by counsel, testified along with a vocational expert (VE) (Tr. 369-396). In a decision rendered November 1, 2004, the ALJ determined that the plaintiff's "back disorder, right knee disorder and right shoulder disorder are considered severe." The ALJ, however, further determined that the plaintiff retains the residual functional capacity to perform a significant range of light work. Thus, he was determined to be not entitled to benefits (Tr. 13-22).

The ALJ's findings became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 11, 2005 (Tr. 5-7). Presently, plaintiff has appealed that decision to this court.

## JUDICIAL REVIEW

The role of this court, on judicial review, is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Pierce v. Underwood, 587 U.S. 552

(1988).  "Substantial evidence" is not "a large or significant amount of evidence but rather such relevant evidence as a reasonable mind might accept to support a conclusion." Id. at 664-65.  "The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  Stunkard v. Secretary of Health and Human Services, 841 F.2d 57 (3d Cir. 1988), quoting Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423(d)(1) (1982).  A claimant can establish such a disability in either of two (2) ways: (1) by producing medical evidence that one is disabled per se as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Regulations No. 4, Subpart P, Appendix 1 (1987); see Heckler v. Campbell, 461 U.S. 458 (1987); Stunkard v. Secretary of Health and Human Services, 841 F.2d at 59; Kangas v. Bowen, 823 F.2d at 777; or (2) by demonstrating an impairment of such severity as to be unable to engage in "any kind of substantial gainful work which exists in the national economy."  Heckler v. Campbell, 461 U.S. at 461; 42 U.S.C. § 423(d)(2)(A).

This method of proving disability requires that the claimant

3

first show that he/she is unable to return to his/her former work due to a physical or mental impairment.  Once a claimant has demonstrated that he/she is unable to perform his/her former work, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he/she is able to perform, taking into consideration the claimant's physical ability, age, education and work experience.  See Kangas v. Bowen, supra; Rossi v Califano, 602 F.2d 55, 57 (3d Cir. 1979); 42 U.S.C. § 423(d)(2)(A).

This case was decided under the medical-vocational regulations which require a five-step sequential evaluation of disability claims.  See generally, Heckler v. Campbell, supra; Santise v. Schweiker, 676 F.2d 925 (3d Cir. 1982).  The sequential evaluation considers in turn current work activity, the severity of impairments, the ability to perform past work and vocational factors.  20 C.F.R. §§ 404.1520 and 416.920.

In this case, the Commissioner reached the fifth step of the evaluation and determined that plaintiff was capable of performing a significant range of light work.

## MEDICAL HISTORY

The relevant evidence in this case consists of medical reports and testimony which are summarized as follows:

Plaintiff was involved in a motor vehicle accident on October

4

16, 2003 while working as a truck driver.  He was given physical therapy at the Concentra Medical Center for several weeks in October and November.  On November 20, 2003, Jeffrey Geller, M.D., reported that plaintiff complained of injuries to his neck, back, right knee, and lower teeth.  A cervical examination showed no pain on motion, swelling, tenderness, and a full range of motion.  A lumbar exam was also normal.  Dr. Geller stated that he found "no physical evidence to support [plaintiff's] complaints."  He added that plaintiff displayed "inappropriate illness behavior," and his "exam does not match up with his subjective complaints" (Tr. 106).

On December 10, 2003, an MRI was performed on plaintiff's right knee.  Dr. Helen Sax reported that was an "abnormal study. Prominent degenerative spur arising from the medical femoral condyle" (Tr. 199).

Plaintiff was given an examination by Dr. Arnold Lincow on December 14, 2003.  Dr. Lincow reported that plaintiff complained of severe pain in his neck, back, and right knee.  The neck pain radiated into his shoulders and he had pins and needles in his right hand and fingers.  Dr. Lincow diagnosed plaintiff with "cervical, thoracic and lumbosacral strain and sprain with associated paravertebral myofascitis pain syndrome [and] clinical cervical and lumbar radiculopathy[1] - suspect herniated discs."  Dr.

---

[1]Radiculopathy- disease of the nerve roots.  Dorland's Illustrated Medical Dictionary, Twenty-ninth Edition, 2000, p. 1511.

Lincow added that plaintiff had "traumatic sprain of the right knee/aggravation injury- with tendonitis and traumatic effusion- suspect internal derangement, traumatic sprain of the right shoulder with tendonitis- suspect tear of the rotator cuff, posttraumatic anxiety/stress syndrome with cephalgia[2] [and] traumatic contusion with fracture/loosening of lower incisor." He concluded that plaintiff was presently disabled from doing any type of gainful employment. He added that "[Plaintiff] is in need of treatment in order to relieve pain, to restore motion and to prevent chronicity" (Tr. 142-145).

On December 16, 2003, plaintiff had a CT scan performed on his cervical spine. Dr. Howard Hutt gave the results as "mild degenerative changes of the neural foramina as indicated from C3/4 through C5/6 without significant stenosis[3]. There is no herniation. The cervical canal has adequate dimensions" (Tr. 197). On this same date, plaintiff had a CT scan of the lumbar spine. Dr. Hutt reported "mild stenosis from L2/3 to L4/5. There is a mild central L5/S1 disc herniation without stenosis and a broad central L4/5 disc herniation" (Tr. 198).

Plaintiff had an MRI of the lumbosacral spine taken on March 15, 2004. Dr. Hutt reported that it was "an abnormal study,

---

[2]Cephalgia- headache. Dorland's at 312.

[3]Stenosis- an abnormal narrowing of a duct or canal. Dorland's at 1698.

6

central disc protrusions with herniations at L3/4 and L4/5 with acquired neural foraminal narrowing and impingement of the anterior thecal sac" (Tr. 195).  On this same date, plaintiff also had an MRI of the cervical spine.  Dr. Hutt again reported an "abnormal study.  There is evidence of disc herniations at C4/5 and C5/6 with acquired neural formaminal narrowing as well as impingement on the anterior thecal sac at these levels" (Tr. 196).

Orthopedic surgeon, Norman Stempler, D.O., examined the plaintiff on March 23, 2004.  After examination and testing, he diagnosed plaintiff with "chronic refractory lumbosacral strain/sprain with myofascitis, myfascial syndrome, herniated nucleus pulposus at L4-L5 and L5-S1, [and] internal derangement right knee involving a tear of the medical meniscus" (Tr. 269-271).

Dr. Lincow saw plaintiff again on March 16 and May 28, 2004 and gave reports to plaintiff's insurance company.  He indicated that plaintiff had just seen orthopedic surgeon, Dr. Stempler, who diagnosed plaintiff with a "chronic lumbosacral strain and sprain." Dr. Lincow gave plaintiff the same diagnoses as in his last report and added that plaintiff has sustained severe and permanent injuries with loss of bodily functions.  He must be kept off of his feet for long periods of time to rest.  He concluded that plaintiff is totally disabled and unable to do any type of gainful employment (Tr. 192-194, 272-274).

Plaintiff had CT scans of his lumbar and cervical spines on

7

July 15, 2004.  Regarding the lumbar spine, Dr. Hutt found it to be an abnormal study as there was a degree of stenosis from L2/3 to L4/5.  He stated further that there was a "broad herniation at L5/S1 as well as a broad herniation at L4/5 and at L3/4."  He added that "these findings are progressive compared to prior studies" (Tr. 280).  Regarding the cervical spine, Dr. Hutt reported that there are moderate herniations at C3/4, C4/5 and C5/6.  There was also mild stenosis with impingement on the thecal sac (Tr. 281).

Dr. Stempler reported on August 10, 2004 that he continues to see the plaintiff for his multitude of symptoms including cervical and lumbar radiculopathy and knee pain.  He added that plaintiff has "an internal derangement involving an oblique tear of the mid body of the medical meniscus.  He concluded that prognosis for a complete recovery is uncertain (Tr. 256).

Plaintiff had electrodiagnostic studies performed on July 15, 2004.  Dr. Stephen Sacks reported that these showed "evidence to support significant L4-5, L5-S1 nerve root involvement right side greater than left as well as C4-5 nerve root involvement again somewhat more predominant on the right side.  The clinical picture continues to show progression with chronic regional pain especially in view if the myofascial activity noted" (Tr. 260-261).

On September 13, 2004, an MRI was performed on plaintiff's right shoulder.  Dr. Sax reported that it was an "abnormal study."  There was "progressive arthritic change at the acromioclavicular

8

joint and elevation of the humeral head, both of which can contribute to impingement" (Tr. 303).  On this same date, plaintiff had an MRI of the right knee.  Dr. Sax reported an "oblique tear of the medial meniscus," and evidence of chondromalacia[4] was noted (Tr. 304).

A vocational expert (VE) also testified at the administrative hearing.  The ALJ asked the VE to consider an individual with plaintiff's vocational background who could only perform unskilled light work, stand or walk two hours, and only occasionally reach with the non-dominant arm.  The VE responded that such an individual could perform a significant number of jobs that exist in the regional and national economy such as cashier, messenger, and interviewer (Tr. 391-395).

## **DISCUSSION**

The Commissioner's findings must be affirmed if they are supported by substantial evidence.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  The role of this court is to determine whether there is substantial evidence to support the Commissioner's decision.  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924, 113 S. Ct. 1294 (1993).

---

[4]Chrondromalacia- softening of the articular cartilage, mostly in the patella.  Dorland's at 344.

In coming to a decision, it is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence.  <u>Richardson v. Perales</u>, <u>supra</u>.

In this case, the ALJ found that the plaintiff's "back disorder, right knee disorder and right shoulder disorder are considered severe."  The ALJ, however, further determined that plaintiff retains the residual functional capacity to perform a significant range of light work.[5]  He was, thus, found not to be entitled to benefits under the Act (Tr. 21-22).  For the reasons which follow, this court finds that the ALJ's decision is not supported by substantial evidence, and the matter should be remanded to the Commissioner.[6]

In the Commissioner's motion for summary judgment, she asserts that Dr. Jeffrey Geller was plaintiff's treating physician[7] and

---

[5]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  20 C.F.R. § 404.1567(b).

[6]It is noted that plaintiff was represented by counsel at his administrative hearing on October 12, 2004.  However, at some point thereafter, he dismissed his counsel and filed his summary judgment motion <u>pro</u> <u>se</u>.

[7]20 C.F.R. § 416.927 (d)(2) provides in part that ". . .[I]f we find that a treating source's opinion on the issue(s) of the

that he determined on November 11, 2003 that plaintiff was able to return to light work after his motor vehicle accident. The Commissioner further asserts that Dr. Geller opined that plaintiff gave minimal efforts in physical therapy treatment and that his legal concerns over shadowed his medical complaints (Tr. 110). The Commissioner argues that the ALJ correctly gave controlling weight to these opinions of Dr. Geller as plaintiff's treating physician.

However, we are not of the opinion, as the Commissioner is, that Dr. Geller is plaintiff's treating physician. Plaintiff states in his summary judgment motion that Dr. Geller was the worker's compensation company doctor that he was required to see after his motor vehicle accident, and the record confirms this. The record shows that plaintiff was injured in a motor vehicle accident on October 16, 2003 while working as a truck driver. He was given physical therapy at the Concentra Medical Center for several weeks in October and November, and on November 20, 2003, Dr. Geller of Concentra opined that he found "no physical evidence to support [plaintiff's] complaints" (Tr. 106).

However, Dr. Geller's opinions are in conflict with reports from doctors who later examined plaintiff and are also in conflict with objective medical testing. In December 2003, Dr. Arnold

---

nature and severity of your impairment(s) is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. . ."

11

Lincow examined the plaintiff and diagnosed him with a number of impairments including "cervical, thoracic and lumbosacral strain and sprain," cervical and lumbar radiculopathy with suspected herniated discs, a right knee injury, and a suspected tear of the rotator cuff (Tr. 142-145).

Dr. Lincow submitted updated reports on plaintiff's conditions in March and May 2004. In these reports, he opined that plaintiff has severe and permanent injuries with loss of bodily functions which totally disable him from any type of gainful employment (Tr. 192-194, 272-274). Plaintiff was also seen by orthopedic surgeon, Norman Stempler, D.O., in March 2004. He found plaintiff to suffer with "chronic refractory lumbosacral strain/sprain with myofascitis, myfascial syndrome, herniated nucleus pulposus at L4-L5 and L5-S1, [and] internal derangement right knee involving a tear of the medial meniscus" (Tr. 269-271).

In addition, the objective testing supports Drs. Lincow and Stempler opinions that plaintiff suffers with these conditions. MRIs of plaintiff's lumbosacral and cervial spine performed in March 2004 resulted in "abnormal studies." Dr. Howard Hutt reported that the lumbar MRI showed "central disc protrusions with herniations at L3/4 and L4/5 with acquired neural foraminal narrowing and impingement of the anterior thecal sac." The

cervical MRI revealed disc herniations at C4/5 and C5/6 (Tr. 196).[8]

Moreover, CT scans of the lumbar and cervical spines in July 2004 revealed similar results.  Dr. Hutt again reported "abnormal studies."  The lumbar scan showed a degree of stenosis from L2/3 to L4/5 and a broad herniation at L5/S1 and L4/5.  Cervical scans showed moderate herniations at C3/4, C4/5 and C5/6 (Tr. 281).  In addition, other electodiagnostic testing on plaintiff's right knee and right shoulder showed arthritic changes in the shoulder and a medial meniscus tear in the knee (Tr. 303-304).

The conflict of the evidence in this matter is readily apparent.  On one side there are opinions from Dr. Geller, the worker's compensation doctor, that plaintiff does not have impairments that are serious enough to disable him from working.  However, on the other side there are opinions from plaintiff's doctors and medical testing that indicate that he does indeed suffer with several impairments which, at least, according to Dr. Lincow disable him from all gainful employment.

This record, however, does not contain one independent examination of the plaintiff.  It does include a state agency

---

[8] Subjective complaints of pain do not require substantiation by clinical findings, Smith v. Califano, supra; Farmer v. Weinberger, 368 F. Supp. 1 (E.D. Pa. 1973), but they must bear on the claimant's physical status, including adverse objective medical findings, diagnoses and opinions.  Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1973), cert. denied, 420 U.S. 931 (1975); Baith v. Weinberger, 378 F. Supp. 603 (E.D. Pa. 1974); see also 20 C.F.R. §§ 1526, 1529.

medical consultant's opinion that plaintiff is able to perform a significant range of light work, but this consultant did not examine plaintiff, and only rendered an opinion from the existing evidence.  We are of the opinion, here, that this matter should be remanded for an independent examination be conducted of the plaintiff with such examining physician rendering an opinion as to his residual functional capacity.  In addition, on remand, to further aid the ALJ in sorting through and considering the conflicting  evidence in this record, the ALJ should utilize the services of a medical expert (ME) at the administrative who would review the evidence of record and render an opinion as the plaintiff's ability to perform gainful employment.

Therefore, the court makes the following:

### RECOMMENDATION

AND NOW, this         day of                            , 2006, it is respectfully **RECOMMENDED** that the Cross-Motions for Summary Judgment be **DENIED** and the matter **REMANDED** to the Commissioner of the Social Security Administration.


S/Linda K. Caracappa

_____

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**